[L. A. No. 505. Department One.—August 12, 1899.]

## JOHN BAXTER et al., Respondents, v. A. D. GILBERT et al., Appellants.

WATER RIGHTS—CLAIM OF SURPLUS WATERS—INTERFERENCE WITH NATURAL FLOW OF STREAM—INJUNCTION.—Where it appears that the respondents as plaintiffs and the nonappealing defendants were entitled to all the waters of a creek and its tributary, which naturally flow within the banks of the creek, the appellants, claiming an overflow of surplus waters, cannot tap the creek at a point above which there is no overflow of surplus waters, so as to take the water of lakes forming a source of supply to the creek, and to interfere with the quantity of water usually flowing in the natural channel of the creek; and they were properly enjoined from so doing by the judgment appealed from.

APPEAL from an order of the Superior Court of Inyo County denying a new trial. George M. Gill, Judge.

The facts are stated in the opinion of the court.

Richard S. Miner, for Appellants.

Reddy, Campbell & Metson, for Respondents.

GAROUTTE, J.—This action was brought to test the respective rights of plaintiffs and defendants to the waters of Little Pine and Pinyon creeks, and also the waters of certain lakes situated high up in the mountains and forming in a great measure the source of supply of Little Pine creek. Judgment was rendered largely in accordance with the claims of plaintiffs, decreeing that defendants Maiers and Gilbert had no rights in such waters and perpetually restraining them from any interference therewith. Maiers and Gilbert claimed to be appropriators of a certain quantity of the waters, and appeal

from the order denying their motion for a new trial. Plaintiffs are riparian owners on Little Pine creek, and also appropriators. The position of appellants is not sharply defined by their briefs, and we are not entirely satisfied whether their main contention here rests upon the claim of the insufficiency of the evidence to support the findings of fact, or upon erroneous conclusions of law made by the trial court, based upon these findings.

It appears to be conceded that the plaintiffs and the non-appealing defendants are entitled to all the waters of Little Pine creek, and its tributary, Pinyon creek, which naturally flow within the banks of Little Pine creek. But these appellants insist that there is a surplus of water at certain seasons of the year, which arises from the overflow of Little Pine creek, and they claim this surplus. The *modus operandi* for the creation of this surplus water is as follows: Appellants filed three appropriation notices of location of waters. By their first notice they claimed five thousand inches of water measured under a four-inch pressure of a certain lake (describing it), and stating that said waters would be diverted from said lake "by means of an open cut about three hundred feet long by six feet wide and ten feet deep, and will be thus turned into and mingled with the waters of Kersarge creek (Little Pine creek), to be diverted therefrom at a point . . . . by a ditch four feet deep by seven feet wide and about two miles long, into the tract of land hereinbefore named." By their second notice of location they likewise claimed five thousand inches of water, under the same pressure, of a certain lake (describing it), and stating that said waters would be diverted "by means of an open cut about three hundred feet long by six feet wide and ten feet deep, and will be thus turned into and mingled with the waters of Kersarge creek (Little Pine creek), to be diverted therefrom at a point . . . . by a ditch." By their third notice of location they claimed ten thousand inches of surplus water of Little Pine creek measured under a four-inch pressure. "Said waters will be diverted from said creek at a point where the notice is posted, by means of a ditch four feet deep and ten feet wide and about three miles long." It will be conceded that these two aforesaid lakes largely form the reservoirs

from which Little Pine creek is fed. It is also a fact that the point of appropriation upon Little Pine creek, located by appellants, is some distance above the point of plaintiffs' appropriation.

There is no overflow of the waters of Little Pine creek above the point where appellants tap the creek with their ditch. The evidence is all one way upon this question. It necessarily follows that it was not the overflow of the creek that appellants sought to appropriate, but a certain amount of water in these two aforesaid described lakes. If such appropriation of waters does not interfere with the usual and ordinary quantity of water flowing down the creek, the right of appellants to appropriate is undoubted; but otherwise, if there be an interference with the quantity of water flowing down the stream. If the tapping of these lakes by appellants reduces the amount of water to which plaintiffs are entitled, or shortens the period of time in which they might otherwise secure water from the creek, then the acts of appellants clearly are a trespass upon plaintiffs' rights—exactly the same kind of trespass as though the creek was tapped and that amount of water directly taken therefrom without any molestation of the lakes. Upon this point the trial court made the following finding of fact: "The defendants A. D. Gilbert, O. I. Maiers, and A. F. Maiers, by making the ditch and openings into East lake as herein in these findings described, have lowered and drained said lakes to such an extent as to prevent the water from flowing into the natural channel in said Little Pine creek, and, by doing the work as in these findings described on said East lake, have allowed the waters therof to escape therefrom and to divert it from the natural channel in said Little Pine creek." There is an abundance of evidence to support this finding of fact. Indeed, it is substantially conceded that appellants have tapped East lake some feet below the natural channel of Little Pine creek, and under those conditions it is self-evident that such an act would materially affect the amount of water flowing down the natural channel of the creek. Upon a careful examination of the record, we are satisfied the evidence is amply sufficient to support the findings of fact made by the trial court, and we are also

satisfied that the conclusions of law based thereon find full support in the evidence.

Appellants rely upon various alleged errors of law committed by the trial court. Many of the questions raised under this head are not material, as the rulings, even if erroneous, do not go to the merits of this appeal. We find no error in the record demanding a reversal of the order.

For the foregoing reasons the order denying the motion for a new trial is affirmed.

Harrison, J., and Van Dyke, J., concurred.

A rehearing in Bank was denied September 12, 1899. On petition for rehearing, the following dissenting opinion was rendered:

BEATTY, C. J.—I dissent from the order denying a rehearing of this case, because I do not think it ought to be finally disposed of here without a decision of the most important question involved—a decision upon which, if in accordance with the contention of the appellants, would necessarily demand a reversal, or important modification, of the judgment appealed from. The right of appellants to interfere with the lakes referred to in the opinion of the court is but one of the questions presented in the briefs of counsel, and to my mind much the less important of the two leading propositions upon which he relies.

It appears from the record that the lands of the plaintiffs are riparian to the stream upon its lower course, near where it empties into Owens river. The stream heads in certain small lakes near the summit of the Sierras, and is fed during the spring and early summer by the melting snows. At such seasons it carries a large amount of water, much more than the plaintiffs can profitably use. The findings of the superior court show that there is a surplus of water when the river is high, but do not indicate the quantity of that surplus. There is evidence to the effect that it is often very large. Notwithstanding this admitted surplus of water over the needs of the plaintiffs, and the fact that it goes to waste below them, the defendants are absolutely enjoined from diverting to their lands any

portion of the stream at any time. The question is thus presented, whether a riparian owner upon the lower course of one of our mountain streams can insist, as against an appropriator whose land is within the watershed of the stream, but nonriparian, that the whole stream in times of flood, when he has no use for the water himself, must come down to him. It may be that this is the riparian doctrine established in this state, but I doubt it; and at all events the question, when it is fairly presented, is too important to be ignored.